ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JUAN A. MATÍAS RIVERA<br><br>Recurrido<br><br>v.<br><br>ON THE WHEELS, LLC h/n/c TAÍNO MOTORS<br><br>Recurrente | KLRA202300605 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor, Oficina Regional de Caguas<br><br>Caso Núm.: CAG-2023-0004673<br><br>Sobre: Compraventa Vehículo de Motor |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico a 20 de diciembre de 2023.

El 29 de noviembre de 2023 On the Wheels, LLC h/n/c Taíno Motors (en adelante, On the Wheels o recurrente) *sometió ante nos un Recurso de revisión.* En este nos solicita la revocación de la *Resolución sumaria* emitida por el Departamento de Asuntos del Consumidor (en adelante, DACo) el 22 de septiembre de 2023.

Mediante referida determinación el DACo decretó que On the Wheels cobró indebidamente la suma de $599.00 en concepto de tablillas de un vehículo de motor usado.

Evaluado el recurso y por los fundamentos que expondremos a continuación, se confirma la resolución recurrida.

### I.

El 13 de junio de 2023, el señor Juan A. Matías Rivera presentó una querella contra On the Wheels, LLC h/n/c Taíno Motors. Alegó que compró un auto usado Marca Chevrolet

Silverado del año 2015 y el concesionario le cobró $599.00 en concepto de tablilla. Solicitó el reembolso de esa cantidad pagada.

El 29 de junio de 2023 *On the Wheels* contestó la querella*.* Adujo que los cargos por tablilla y su monto fueron convenidos y desglosados conforme al Reglamento número 8599 del Departamento de Asuntos del Consumidor (DACo), Reglas 7 (B) 14 y 11 (F)[1]. Ese mismo día le cursó un requerimiento de producción de documentos al querellante.

Surge del expediente un documento de On the Wheels del 17 de agosto de 2021 que contiene la información de la compra y venta del vehículo Chevrolet Silverado de 2015. De este surge que el precio de la unidad fue de $23,500.00 y que la compra sería "cash". El inciso relacionado a las "tablillas" aparece en cero (0.00).[2] En otro documento surge una Tabla de Cargos por Tablillas y/o Traspaso[3], con la siguiente información:

| | |
|---|---|
| Costo de tablilla | 265.00 |
| Mensajería | 50.00 |
| Gestoría DTOP | 50.00 |
| Trámite documentos bancarios | 50.00 |
| Archivo o digitalización | 50.00 |
| Trámite solicitud | 50.00 |
| Investigación de crédito | 40.00 |
| Comodity y contrato | 50.00 |
| Trámite y juramentación a/u | 40.00 |
| Gestoría DTOP A/U | -- |
| | $595.00 |

Atendidos los escritos, el DACo emitió una Resolución Sumaria. Mediante esta declaró *Con Lugar* la querella incoada contra On The Wheels por el cobro indebido de $599.00 en concepto de tablilla de un vehículo de motor usado. Los hechos reseñados son los que a continuación relatamos:

---

[1] Anulado por el Reglamento de Prácticas Comerciales, Reglamento 9158 de 7 de marzo de 2020.
[2] Apéndice pág. 1.
[3] Apéndice pág. 12.

1. La parte querellante se identifica como Juan A. Matos Rivera (en lo sucesivo el Querellante) mayor de edad, con dirección postal: HC 2 Box 15577 Aibonito, Puerto Rico 00705-9672.

2. La parte querellada On the Wheels, LLC h/n/c Taino Motors (en lo sucesivo la Querellada) con dirección postal: Po Box 8853 Carolina, Puerto Rico 00988-8853.

3. Según la Orden de Compra, con fecha del 14 de agosto de 2021, el Querellante adquirió en la Querellada, un vehículo de motor usado del año 2015 de la marca Chevrolet modelo Silverado, tablilla 1058334.[4]

4. La Querellada le cobró al Querellante la cantidad de $599.00 en concepto de tablillas.[5] Ese pago cual no fue acreditado en la Orden de Compra del Vehículo.

5. Debido a esta situación, el Querellante radicó la querella de epígrafe solicitando la devolución del pago hecho en concepto de tablillas y gastos de cierre de un vehículo de motor usado.

El foro administrativo evaluó el derecho respecto a las disposiciones del Código Civil relacionada a los contratos, al Reglamento 8034 de Procedimientos Adjudicativos de DACo y las Reglas 14 y 20 (f) del Reglamento de Prácticas Comerciales, Reglamento número 9158 de 6 de febrero de 2020, efectivo el 7 de marzo de 2020.   En específico aludió a la Regla 20(f) de referido reglamento que en parte dispone como sigue: "[e]n el caso de los vehículos de motor usados, el concesionario no podrá cobrar cuantía alguna por concepto de traspaso o gestiones relacionadas al mismo."[6]

Aplicados los hechos al derecho, el foro administrativo concluyó que:

La Querellada fue la vendedora del vehículo, y quien cobró al Querellante la cantidad de $599.00 en concepto de tablilla.  Según lo dispone el inciso f, de la Regla 20 del Reglamento supra, para los vehículos

---

[4] Exhibit I Orden de Venta del vehículo adquirido por el Querellante.
[5] Exhibit ll Recibo 2511 en donde se indica que el Querellante pagó la cantidad de $599.00 por concepto de tablilla.
[6] Apéndice pág. 19.

nuevos el cargo por registro y tablilla está permitido, sujeto a que el monto sea claramente desglosado en el contrato de compraventa y no exceda a las cuantías establecidas por el Departamento de Transportación y Obras Públicas. Sin embargo, está prohibido, según el Reglamento, cobrar cuantía alguna por concepto de traspaso o gestiones relacionados al mismo en el caso de vehículos de motor usados.

En el caso de marras, el vehículo adquirido por la Querellante fue uno usado, la Querellada no podía cobrar cantidad alguna por concepto de traspaso o gestiones relacionadas al mismo. La Regla 20, inciso f, del Reglamento, supra, prohíbe expresamente el cobro por cuantía alguna por concepto de traspaso o gestiones relacionadas al mismo en el caso de vehículos de motor usados.[7]

Consecuentemente, el DACo concluyó que el querellado cobró indebidamente la suma de $599.00 en concepto de tablillas de un vehículo de motor usado.

Sobre esta determinación, el 11 de octubre de 2023 On the Wheels sometió una solicitud de reconsideración. El DACo acusó recibo de la solicitud de reconsideración, mas no la resolvió en el término reglamentario[8], por lo que el recurrente acudió a este foro intermedio de revisión. Aludió que el DACo incidió al:

PRIMERO: Al resolver que un concesionario está impedido de cobrarle a un consumidor los cargos y gestiones relacionados al traspaso y registración de un vehículo de motor usado importado.

SEGUNDO: Al disponer del procedimiento administrativo por la vía sumaria en contravención a los derechos estatutarios y constitucionales de debido proceso de ley de la querellada-recurrente.

Examinado el Recurso de Revisión, la prueba unida al Apéndice y el análisis del derecho aplicable a estos hechos, disponemos[9].

---

[7] Apéndice págs. 19-20.
[8] Regla 29 del Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor, Reglamento 8034 de 14 de junio de 2011 y sección 3.15 de la Ley Núm. 38-2017 conocida como la Ley de Procedimiento Administrativo Uniforme.
[9] Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones. 4 LPRA Ap. XXII-B Regla 7(B)(5).

**II.**

**A.**

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Hernández Feliciano v. Mun. Quebradillas, 211 DPR ___ (2023), 2023TSPR6, res. 25 de enero de 2023; Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210 DPR 79 (2022); Capó Cruz v. Jta. de Planificación et al., 204 DPR 581 (2020); Torres Rivera v. Policía de PR, *supra*, pág. 626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012). Para así lograrlo, corresponde a la parte que las cuestiona "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración". Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 128 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Sobre las determinaciones de hechos de una agencia administrativa, la parte que las impugna tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v.

CFSE, 188 DPR 252, 276-278 (2013). Así, pues, evidencia sustancial ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. OEG v. Martínez Giraud, *supra*; Batista, Nobbe v. Jta. Directores, *supra*, pág. 216.

En cuanto a las conclusiones de derecho estas serán revisables en todos sus aspectos por el tribunal. Véanse Sec. 4.5, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 del 30 de junio de 2017, (LPAU) 3 LPRA sec. 9675; Hernández Feliciano v. Mun. Quebradillas, *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020). Claro está, la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo. Hernández Feliciano v. Mun. Quebradillas, *supra*; Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591. Los tribunales deben darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. Torres Rivera v. Policía de PR, 196 DPR 606, 627 (2016). Es decir, no pueden descartar libremente las conclusiones e interpretaciones de la agencia. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177,187 (2009). Aun en casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. JP, Plaza Santa Isabel v. Cordero Badillo, *supra*; De Jesús v. Depto.Servicios Sociales, 123 DPR 407, 417-418 (1989).

Ahora bien, la deferencia a las determinaciones de la agencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el

organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Torres Rivera v. Policía de PR, *supra,* pág. 628. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd*.

**B.**

En cuanto a la disposición de los asuntos sometidos en las agencias administrativas, la LPAU, "estableció un cuerpo de reglas mínimas que provee uniformidad al procedimiento decisional de las agencias públicas en nuestra jurisdicción […] con el propósito de alentar la solución informal de las controversias administrativas". Torres Santiago v. Depto. Justicia, 181 DPR 969 991 (2011). La mencionada disposición legal, además, "faculta a las entidades administrativas a disponer de los asuntos ante su consideración mediante resolución sumaria", excepto cuando la ley orgánica de la agencia disponga lo contrario. OCS v. Universal, 187 DPR 164, 177 (2012); Torres Santiago v. Depto. Justicia, *supra*, pág. 991. En particular, la Sección 3.7 (b) de la LPAU, atinente a la Conferencia con Antelación a la Vista; Órdenes y Resoluciones Sumarias dispone que:

> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan **la solicitud de orden o resolución sumaria** y los documentos incluidos con la **moción en oposición**, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las

controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.

La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que:

(1) existen hechos materiales o esenciales controvertidos;
(2) hay alegaciones afirmativas en la querella que no han sido refutadas;
(3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o
(4) como cuestión de derechos no procede.
3 LPRA sec. 9647

Este mecanismo de disposición sumaria persigue "agilizar el proceso adjudicativo en casos en que no estén presentes los hechos materiales en controversia". OCS v. Universal, *supra*, pág. 177-178. De manera, que "[n]ada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expediente señale claramente la corrección de la determinación de la agencia". Íd., pág. 178. De este modo se evita el tener que celebrar una "audiencia evidenciaria [que] no aportaría ningún elemento meritorio al proceso analítico". OCS v. Universal, *supra*, pág. 178, citando a J. Echevarría Vargas, *Derecho administrativo puertorriqueño*, San Juan, Ed. Situm, 2012, pág. 231.

Sin embargo, el Tribunal Supremo ha recalcado que "la naturaleza informal o sumaria de un proceso adjudicativo no puede ser un obstáculo para que se les garanticen a las partes afectadas el mínimo irreductible de garantías procesales reconocidas como justas y equitativas". Torres Santiago v. Depto. Justicia, *supra*, pág. 993. Específicamente, hay que conceder a la parte afectada una notificación adecuada, la oportunidad de confrontarse con la prueba de la otra parte, la de presentar la

suya, la de reconsiderar la determinación administrativa y la de revisar judicialmente dicha determinación. Íd., pág. 994.

Cónsono a la disposición antes aludida, el Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 8034, del 13 de junio de 2011 dispone en la Regla 11.1 para la resolución sumaria de las controversias lo siguiente:

> El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

## C.

Mediante el Reglamento de Prácticas Comerciales, Reglamento Núm. 9158, DACO, la agencia agrupó las medidas que regulan determinadas prácticas comerciales. Íd., Regla 2. Esto con el fin de velar por la seguridad y confianza de los consumidores. Íd. Este reglamento aplica a toda persona natural o jurídica que se dedique a ofrecer bienes o servicios a consumidores en la jurisdicción del Gobierno de Puerto Rico.

La Regla 14, b, 14 del Reglamento 9158, define como parte del concepto de prácticas y anuncios engañosos, lo siguiente:

> 14. Cobrar una cantidad de dinero por concepto de cargos por servicios, cuando dichos servicios son inexistentes o no susceptibles de ser corroborados. Los servicios básicos accesorios, que no sean operacionales, sino que resulten necesarios para que el consumidor reciba el bien o servicio ofrecido, no pueden gravarse con cargos adicionales separados del precio.

Respecto a la venta de vehículos la Regla 20 (f) del referido reglamento dispone lo siguiente:

> En toda transacción de compraventa o arrendamiento de un vehículo de motor nuevo, los gastos de registro o gestiones relacionadas al mismo, no deberán exceder las cuantías establecidas por el Departamento

de Transportación y Obras Públicas para lograr el registro de la unidad. **Todo gasto atribuible a dicha transacción deberá ser claramente desglosado por el vendedor en el contrato de compraventa. No se podrá cobrar dos veces por la misma gestión. En el caso de los vehículos de motor usados, el concesionario no podrá cobrar cuantía alguna por concepto de traspaso o gestiones relacionadas al mismo**.

## D.

Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000, según enmendada, atiende lo relacionado a los traspasos de vehículos de motor. El Artículo 2.40(e), renumerado al 2.41 (e), mediante la Ley 125 de 6 de noviembre de 2023[10], 9 LPRA sec. 5041, menciona como sigue:

(e) En los casos en que un concesionario de venta de vehículos de motor tome unidades usadas, como parte del pronto pago del precio de otros vehículos de motor, el traspaso podrá efectuarse mediante declaración jurada suscrita por el concesionario o vendedor, siempre y cuando, el dueño del vehículo de motor haya expresado previamente su voluntad de cederlo o traspasarlo a este, estampando su firma al dorso del certificado de título del vehículo. En tales casos, requerirá el cotejo previo por un funcionario del concesionario, debidamente autorizado por el Departamento, del expediente que obre en el Sistema DAVID PLUS en el DISCO además de la declaración jurada del concesionario deberá especificar la fecha en que fue cedida o entregada la unidad, el nombre y la dirección del dueño, al igual que el medio usado para la adecuada identificación de dicha persona. También incluirá una descripción detallada del vehículo de motor, la cual contará con los datos siguientes: marca, año, color, modelo o tipo, número de tablilla que poseía el dueño anterior, número de registro del vehículo de motor, número de identificación del vehículo, tipo de motor, caballos de fuerza de uso efectivo, numero de marbete (inspección), numero de puertas y cualquier otros números o marcas de identificación de la unidad o de sus piezas. **El concesionario no tendrá que ponerle tablilla a las unidades recibidas como pronto pago del precio ya que estas formarán parte de su inventario al igual que las unidades nuevas o usadas importadas que tampoco se les asignan tablillas hasta que son vendidas.**

---

[10] La Ley 125 de 6 de noviembre de 2023 renumeró el anterior Art. 2.40 como Artículo 2.41.

A la luz de la antes mencionada normativa, evaluamos.

### III.

El recurrente *On the Wheels* alega que a tenor con la Regla 2.40(e)[11] de la Ley de Vehículos y Tránsito, los concesionarios vienen obligados a realizar el trámite de tablilla y traspaso de un vehículo de motor usado importado a partir de la venta, como si se tratara de un vehículo de motor nuevo. Adujo que en el caso de vehículo de motor usados importados, no hay duplicidad de cargos para el trámite de traspaso de tablilla, a diferencia de cuando se trata de un vehículo de motor usado que ya fue registrado con una tablilla en Puerto Rico. Por eso alegó que la Regla 20 (f) del Reglamento de DACo no aplica a los vehículos de motor importados, pues estos se rigen por el Artículo 2.40 (e) de la Ley Núm. 22-2000. Evaluamos.

El mencionado Artículo 2.40, ahora 2.41 (e) de la Ley Tránsito, 9 LPRA sec. 5041, dispone, en lo pertinente lo siguiente:

> (e) En los casos en que un concesionario de venta de vehículos de **motor tome unidades usadas**, como parte del pronto pago del precio de otros vehículos de motor, el traspaso podrá efectuarse mediante declaración jurada suscrita por el concesionario o vendedor, siempre y cuando, el dueño del vehículo de motor haya expresado previamente su voluntad de cederlo o traspasarlo a este, estampando su firma al dorso del certificado de título del vehículo. […] El concesionario no tendrá que ponerle tablilla a las unidades recibidas como pronto pago del precio ya que estas formarán parte de su inventario **al igual que las unidades nuevas o usadas importadas que tampoco se les asignan tablillas hasta que son vendidas.**

Vemos que el mencionado artículo se refiere al traspaso de unidades usadas tomadas **como pronto pago**, lo que no es aplicable a este caso, pues aquí se trata de la **compra** de un vehículo usado. Aun así, de acuerdo con las determinaciones de

---

[11] Íd.

hechos 3, 4 y 5, el Querellante adquirió en la Querellada, un vehículo de motor usado del año 2015 de la marca Chevrolet modelo Silverado, tablilla 1058334; la Querellada le cobró al Querellante la cantidad de $599.00 en concepto de tablillas. Ese pago no fue acreditado en la Orden de Compra del Vehículo. Debido a esta situación, el Querellante radicó la querella para la devolución del pago hecho en concepto de tablillas y gastos de cierre de un vehículo de motor usado.

Los hechos antes mencionados no fueron contradichos. Corroboramos del expediente, un documento de compra del 17 de agosto de 2021, del cual surge que el precio de venta de la unidad fue de $23,500.00 en "cash", y el inciso relacionado a las "tablillas" aparece en cero (0.00).[12]  En documento aparte surge una Tabla de Cargos por Tablillas y/o Traspaso[13], con la siguiente información:

| | |
|---|---|
| Costo de tablilla | 265.00 |
| Mensajería | 50.00 |
| Gestoría DTOP | 50.00 |
| Trámite documentos bancarios | 50.00 |
| Archivo o digitalización | 50.00 |
| Trámite solicitud | 50.00 |
| Investigación de crédito | 40.00 |
| Comodity y contrato | 50.00 |
| Trámite y juramentación a/u | 40.00 |
| Gestoría DTOP A/U | |
| | $595.00 |

Como vemos, en la Orden de Compra del vehículo no se incluyó la información relacionada a la tablilla o los gastos de registro o gestiones relacionadas al este, como lo requiere la Regla 20 (f) del Reglamento 9158.  Además, surge de la tabla aquí transcrita, que se están facturando unos cargos adicionales separados al precio, lo cual también, transgrede la Regla 14 (b) (14) del Reglamento 9158.  De manera que, independientemente

---

[12] Apéndice pág. 1.
[13] Apéndice pág. 12.

a que el auto sea uno nuevo o se considere nuevo por ser importado, como alega el recurrente, esa información debía constar en el documento de la orden de compra.  En este caso, el acápite relacionado a la tablilla, estaba en cero (0.00), por tanto, no podían cobrar por tales gestiones al comprador, mediante documento aparte.

Por tal razón entendemos que la determinación del foro administrativo fue razonable a la luz de la información del expediente y el derecho aplicable.

En el segundo señalamiento de error el recurrente cuestionó la facultad del DACo para disponer de la controversia por la vía sumaria, pues no hubo una solicitud de las partes para que se resolviera sumariamente la querella.

En términos procesales, aun cuando no surge del expediente que alguna de las partes solicitara la disposición de la controversia por la vía sumaria, el foro administrativo no está imposibilitado para resolver las controversias por tal método, cuando la prueba ante su consideración así se lo permite.

La Sección 3.7 de LPAU solo **prohíbe** la disposición sumaria cuando (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

En este caso, el recurrente fue notificado de la querella, tuvo la oportunidad de contestarla, y así lo hizo, así como de presentar prueba a su favor.  Incluso, surge del apéndice del recurso que incoó el recurrente, cierta prueba documental relacionada a la copia del contrato de compra y el desglose de los cargos cobrados

al recurrido.   Esta información era suficiente para disponer del asunto por la vía sumaria, sin que sea necesario posponer los procesos con la celebración de una vista administrativa.  Es decir, entendemos que la prueba que obra en el expediente es suficiente para disponer de la controversia por la vía sumaria, lo que no amerita una vista en los méritos.   Según pautamos, lo determinante es que el recurrente fue notificado de la acción en su contra, tuvo la oportunidad de comparecer y presentar prueba a su favor y así lo hizo.  Vemos que la determinación del DACo se sustenta con la prueba que surgía del expediente.   Esta determinación no es irrazonable ni transgredió los derechos del recurrente.  Por lo cual, no vamos a intervenir con el criterio de la agencia de resolver el caso de forma sumaria.

## IV.

Por las razones antes expresadas, *Confirmamos* la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones